UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NADIA ALQUAHWAGI, on behalf
of herself and as Personal Representative
of the Estate of Mohammed Khairi, deceased,

        Plaintiff,        No. 11-cv-14826

vs.        Hon. Gerald E. Rosen

SHELBY ENTERPRISES, INC., and
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendants.
_____/

(1) OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND
TO STATE COURT AND DENYING PLAINTIFF'S ALTERNATIVE REQUEST
FOR LEAVE TO AMEND, WITHOUT PREJUDICE, AND
(2) ORDER REMANDING THIS MATTER TO THE PLAN ADMINISTRATOR
<u>AND ADMINISTRATIVELY CLOSING THIS CASE</u>

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on February 25, 2013

PRESENT:   Honorable Gerald E. Rosen
                   United States District Chief Judge

I.  INTRODUCTION

This Breach of Contract/Negligence action was timely removed by Defendants from the Macomb County Circuit Court on federal question grounds based upon the complete preemption of the action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Plaintiff thereafter filed the instant Motion

1

to Remand contending that her case is not preempted by federal law because the employee benefits plan at issue falls within ERISA's "safe harbor" provisions, and as such, removal on federal question grounds was improper.[1] Defendant has responded to Plaintiff's Motion and Plaintiff has replied.

Having reviewed and considered the parties' briefs and supporting documents, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff's decedent, Mohammed Khairi, was an hourly employee of Defendant Shelby Enterprises, Inc. ("Shelby") from November 2, 2009 until April 23, 2011. Shelby makes various benefits available to its employees, including group life, health, dental and disability insurance. Employees become eligible for benefits on the first day of the month following 90 days of employment.

The group life insurance plan available to Shelby employees since April 2008 (the "Plan") is through Defendant Prudential Life Insurance Company of America ("Prudential"). The Plan's Summary Plan Description ("SPD") expressly states that the Plan is an ERISA employee welfare plan and identifies Shelby as the "Plan Sponsor," the

---

[1] In the alternative, if the Court finds removal to have been proper, Plaintiff asks that she be granted leave to amend her complaint to properly allege claims arising under ERISA.

"Plan Administrator," and as the "Agent for Service of Legal Process." [*See* SPD, Defendant Shelby's Exhibits D; Defendant Prudential's E.] The SPD also designates Shelby's address as the address of the Plan and the Plan Administrator, and states that all communications concerning the Plan are to be directed to Shelby's Human Resources Department. *Id.*

As stated in the Plan, an employee is eligible to become insured under the Plan only if he or she is "in the Covered Classes of the Booklet's Schedule of Benefits and meet[s] the requirements in the Booklet's Who is Eligible section." [*See* Plan, Defendant Shelby's Ex. C; Defendant Prudential's Ex. D.] An employee's "class" is determined by Shelby, "under its rules [and] on dates it sets." *Id.* p. 7. An employee becomes insured under the Plan when, among other things, he has "met any evidence requirement for Employee insurance." *Id.* pp. 7-9. Life insurance under the Plan is "contributory insurance," *see* Plan, p. 27. For life insurance coverage, each Shelby employee pays 100% of the premium. [*See* Declaration of Jennifer Dedenbach, ¶ 7, Shelby Ex. A.] To obtain Dependents Insurance under the Plan, the employee himself must be insured under the Plan. *See* Plan at p. 9.

Mohammed Khairi did not sign up for any benefits when he first became eligible to do so upon completion of his first 90 days of employment in February 2010. Employees who do not sign up for benefits when they are first eligible to do so may apply later for benefits only during a once-annual Open Enrollment period. Dedenbach

Decl., ¶ 8-10.  Shelby held such an Open Enrollment on Friday, March 25, 2011.  *Id.* at ¶ 11; *see also* Defendant Shelby's Ex. E, Notice of 3/25/11 Open Enrollment.

At the March 25, 2011 Open Enrollment, Khairi obtained a Shelby Enterprises 2011 Benefit Election Form for hourly employees.  Khairi filled out the form.  Among the benefits Khairi applied for was the Prudential Life Insurance.  Khairi applied for $50,000 in coverage for himself, $50,000 for his spouse, and $10,000 in child life insurance.  Each of the portions on the form for the foregoing types of life insurance contained an asterisk (*) with a corresponding asterisk at the bottom of the insurance portion of the form stating:

> *  Guaranteed issue amounts are for new hires only.  *Any employee electing after their original eligibility date* or increasing amounts, *will need to complete an Evidence of Insurability Form*.

*See* Shelby Ex. F (emphasis added).

Khairi signed the form on Monday, March 28, 2011, and turned it in to Shelby that same day.  *Id.*; *see also*, Dedenbach Decl., ¶ 12.

Also on March 28, 2011, Khairi signed and submitted to Shelby a Shelby Enterprises Optional Term Life Insurance & Dependent Term Life Insurance Enrollment Form, which he had also obtained at the March 25 Open Enrollment.  That Form also provided that for this optional additional insurance "Late entrants are required to provide evidence of insurability satisfactory to Prudential to enroll in all coverage amounts."  *See* Shelby Ex. G.  The Form further provided, "If you apply for an amount that requires

evidence of good health, your coverage will be effective on the date of approval for the amount requiring evidence if you are actively at work on that date. . . ." *Id.*

On April 19, 2011, Khairi signed and submitted to Shelby a Prudential Short Form Health Statement Questionnaire. This form contained five "yes/no" questions for him to answer. Khairi answered "yes" to one of the questions about pre-existing health conditions:

> Within the last five years, have you been treated for or had any trouble with any of the following: heart; chest pain; high blood pressure; cancer or tumors; diabetes; lungs; kidneys; liver; alcoholism; mental or nervous disorder, or have you been diagnosed with or treated by a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)?

Prudential Ex. G; Shelby Ex. H.

Directly following the five questions, the questionnaire stated, in bold-face print, the following:

> **Prudential reserves the right to request additional health information on the basis of the response given to the above questions**.

*Id.*

Immediately above the signature line, the form stated:

> I agree that the coverage applied for is subject to the terms of the plan and shall become effective on the date or dates as established by the plan, *provided the evidence of good health is satisfactory*.

*Id.* (emphasis added)

Khairi submitted the signed questionnaire to Shelby as his Evidence of Insurability

5

to be forwarded to Prudential.

Four days later, on April 23, 2011, Mr. Khairi died of heart failure. *See* Death Certificate, Shelby Ex. K.

Meanwhile Prudential received the Short Form Questionnaire Khairi had submitted on April 19 and, based upon his answers, determined that further information was required to process his application for life insurance. Therefore, apparently unaware of Mr. Khairi's demise, on May 6, 2011 Prudential sent him a letter with a longer "Evidence of Insurability" form which it required him to complete and return within 45 days. *See* Shelby Ex. L. Approximately eight weeks later, on July 4, 2011, having received no response to its inquiry, Prudential sent another letter. *See* Prudential Ex. I. When no response was received to this second letter, on September 26, 2011, Prudential sent a letter notifying Khairi that it had stopped processing his application and was closing its file, subject to reopening it upon receipt of the completed long-form Evidence of Insurability it previously requested. *See* Prudential Ex. J. Some time after sending this letter, Prudential learned that Mr. Khairi had died on April 23, 2011.

Unaware that Prudential had not approved Khairi's application for group life insurance coverage, beginning on April 8, 2011, (i.e., shortly after Khairi applied for the insurance at the March 25 Open Enrollment), and continuing for the next four weeks, Shelby deduct $9.48 from Khairi's weekly paychecks. On May 4, 2011, Shelby refunded the $37.92 total in mistaken payroll deductions to Khairi's widow. Dedenbach Decl., ¶

6

17; *see also* Payroll Journal entry, Shelby Ex. J.

Notwithstanding having been refunded the mistaken payroll deductions, a week after being notified by Prudential that it had stopped processing Khairi's application for life insurance and had closed his file, on October 5, 2011, Plaintiff instituted this action in Macomb County Circuit Court alleging in her Complaint that, in failing and refusing to pay death benefits pursuant to either the Shelby basic group life insurance plan or pursuant to the optional enhanced additional coverage, Defendants are liable to her for breach of contract (Count I) and negligence (Count II). On November 2, 2011, Defendants removed the action to this Court alleging federal question jurisdiction under ERISA. Plaintiff now seeks to remand the case back to state court.

### III. DISCUSSION

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). One category of cases of which district courts have original jurisdiction is "federal question" cases, i.e., cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Determining whether a particular case arises under federal law generally turns on the "well-pleaded complaint" rule. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9–10 (1983). Pursuant to this rule, "whether a case is one arising under the Constitution or a law or treaty of the United

States, in the sense of the jurisdictional statute[,] ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914). Thus, "a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law," *Franchise Tax Bd., supra*, at 10.

There is, however, an exception to the well-pleaded complaint rule. "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 2494 (2004) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id*. ERISA is one of these statutes.

Congress enacted ERISA to "protect ... the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA

includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523(1981).

Both the Supreme Court and the Sixth Circuit have repeatedly emphasized the broad scope of ERISA's "expansive" preemption provision. *See e.g., Aetna Health, Inc. v. Davila, supra,* 542 U.S. at 208; *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991) (recognizing "that virtually all state law claims relating to an employee benefit plan are preempted by ERISA").

However, to trigger complete preemption under ERISA -- and hence establish federal subject matter jurisdiction by application of the doctrine -- requires the existence of an ERISA "employee benefit plan."[2] *See Swinney v. General Motors*, 46 F.3d 512, 517 (6th Cir.1995) (requiring that ERISA cover the benefit plan for the court to have jurisdiction)*; Langley v. Daimler Chrysler Corp.*, 502 F.3d 475, 482 (6th Cir. 2007) (collecting cases and noting that the majority of federal courts require an ERISA plan for federal subject matter jurisdiction over an ERISA claim).

In determining whether a plan is an ERISA plan, the Court must *ab initio* apply the so-called "safe harbor" regulations established by the Department of Labor to

---

[2] An "employee welfare benefit plan" is defined in ERISA as "any plan, fund or program [that is] established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of sickness, accident, disability, [or] death." 29 U.S.C. § 1002(1).

9

determine whether the program is exempt from ERISA. *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (citing *Fugarino v. Hartford Life and Acc. Ins. Co.*, 969 F.2d 178, 183 (6th Cir. 1992), *cert. denied*, 507 U.S. 966 (1993)). Those DOL regulations, 29 C.F.R. § 2510.3-1(j), exclude an employee insurance policy from ERISA coverage if: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions or dues checkoffs and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deductions or dues checkoffs. *Id.* A policy will be exempted under ERISA only if all four of the "safe harbor" criteria are satisfied. *Thompson, supra; Fugarino, supra; Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 388 (6th Cir. 2009). It is only the third element -- whether Shelby "endorsed" the policy -- that is at issue in this case.

In *Thompson*, the Sixth Circuit held that the relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' point of view. 95 F.3d at 436-37 (citing *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1134 & 1137 n.6 (1st Cir. 1995). The court stated that sufficient involvement on the employer's part to establish endorsement

10

is found "where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework." *Thompson*, 95 F.3d at 437. *See also Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989) (where employer distributed a summary plan description detailing the employees rights under ERISA, the safe harbor regulations were inapplicable.); *Nicholas v. Standard Ins. Co.*, 48 Fed. App'x 557, 563 (6th Cir. 2002) (holding safe harbor provisions inapplicable where SPD stated plan was an ERISA plan, informed employees of ERISA rights, their right to a federal suit, to plan documents, annual report and explanation of claim denial, and prohibited ERISA discrimination.)

By way of further example, the *Thompson* court also stated that "where the employer plays an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits provided thereunder" a finding of endorsement may be appropriate. *Id.* (Citation omitted). *See also Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir. 1990) (considering, *inter alia*, employer's role in devising eligibility requirements when determining the applicability of the safe harbor regulations). "Similarly, where the employer is named as the plan administrator, a finding of endorsement may [also] be appropriate." *Thompson, supra*;

*Kanne*, *supra* (same).

In *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir. 1991), the Fifth Circuit held that where the employer distributed a booklet, embossed with its logo, to all employees which encouraged them to give the policy "careful consideration" as it could be a "valuable supplement to your existing coverage," and which referred to the plan as "our plan," and where the employer employed a full-time employee benefits administrator, who accepted claims forms from employees and submitted them to the insurer, the employer had endorsed the plan. *See also Magee v. Life Ins. Co. of North America*, 261 F. Supp. 2d 738, 745-46 (S.D. Tex. 2003) (endorsement found because SPD stated "[your employer is offering you the opportunity to purchase this insurance to make your benefit program more comprehensive and responsive to your needs.")

Applying the foregoing authorities to the facts of record in this case, the Court finds substantial evidence of Shelby's endorsement of the life insurance plan at issue. Shelby's SPD [Shelby Ex. D] expressly states that the group life insurance plan through Prudential is an ERISA plan. *See* Ex. D, p. 1. The SPD states that the Plan is "intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974." *Id.* The SPD further states that the life insurance plan is an "Employee Welfare Benefit Plan," identifies Shelby as the Plan Sponsor and Plan Administrator, and states that all communications regarding the Plan are to be directed to Shelby's Human

Resources Department.  *Id.*

The SPD further includes complete ERISA claims procedures, procedures for appealing adverse determinations, and a full statement of employees' "Rights and Protections" under ERISA, including the rights to examine Plan documents, to obtain copies of Plan documents, to receive a copy of the annual report, to a written explanation of denial of a claim, to file suit in federal court, and to seek assistance from the Department of Labor.  *Id.,* pp. 2-5.  The SPD further informs employees of the fiduciary duties ERISA imposes upon the persons operating the Plan and notes that ERISA prohibits discrimination intended to prevent employees from receiving a Plan benefit or from exercising their rights under the Plan. *Id.*

Further, Shelby's life insurance plan requires Shelby to determine which employees will be eligible for coverage:  the Plan states that an employee must be in a "covered class" to be eligible for life insurance, and that an employee's "class" is determined by Shelby under its rules and on dates it sets.  [*See* Plan, Shelby Ex. C, pp. 7, 29.]  Additionally, the company's employee handbook [Shelby Ex. B] contains statements encouraging employees to take advantage of its life insurance program.

Based upon the foregoing, the Court concludes that the Shelby life insurance plan is not exempt from ERISA.  Therefore, Defendants' removal of this case on federal question grounds was proper.  Accordingly, Plaintiff's motion to remand to state court will be denied.

B.     REMAND TO THE PLAN ADMINISTRATOR

In her alternative motion, Plaintiff asks that the Court grant her leave to amend her Complaint to reform it to reflect federal claims under ERISA. The Court would normally grant such a request. However, it is plain that Plaintiff has not yet exhausted her ERISA administrative remedies.

As the Sixth Circuit has held, though ERISA does not explicitly require exhaustion of administrative remedies, "[the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Constantin v. TRY, Inc*, 13 F.3d 969, 973 (6th Cir. 1994); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991); *see also Baxter v. C.A. Mer. Corp.*, 941 F.2d 451, 453 (6th Cir. 1991). Not only does the legislative history of ERISA support this proposition, *see Amata v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980), but also the relevant ERISA provision reads: "[Every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). *See Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226-27 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.C. 863 (1986). As the court explained in *Baxter v. C.A. Mer., supra*,

> Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement. It

14

> would be "anomalous" if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized.

941 F.2d at 453 (citations omitted).

Courts have recognized that where an ERISA plaintiff has not had the opportunity for a full and fair review before the plan administrator, rather than conduct a *de novo* hearing on the merits, it is appropriate for a district court to remand the case to the plan administrator to allow the plaintiff to exhaust his administrative remedies. *See Gilliam v. Hartford Life and Acc. Ins. Co.*, 2006 WL 2873475 at * 10 (E.D. Ky. 2006), and cases cited therein.

Shelby's life insurance plan provides for an administrative determination of claims and for two levels of appeals from an adverse determination. The Court finds that it is only appropriate that Plaintiff in this case be given the opportunity for full consideration of her claim for benefits via the same channels that would have been available to her if her claim had been promptly completed and timely submitted to the plan administrator. Therefore, the Court will remand this matter to the plan administrator for a determination of Plaintiff's claim. The Court makes no judgment with respect to the merits of Plaintiff's claim itself, as the decision rests with the plan administrator.

CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand to State Court **[Dkt. # 15]** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's alternative motion for leave to amend is also denied, without prejudice.

IT IS FURTHER ORDERED that this matter is REMANDED to the Plan Administrator for determination of Plaintiff's claim for life insurance benefits and this federal case will, accordingly, be ADMINISTRATIVELY CLOSED, without a determination of the merits. Plaintiff may move to re-open this case after she has fully exhausted her administrative remedies.


                                              s/Gerald E. Rosen
                                              Chief Judge, United States District Court

Dated: February 25, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 25, 2013, by electronic and/or ordinary mail.

                                              s/Julie Owens
                                              Case Manager